# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-60287

United States Court of Appeals
Fifth Circuit

**FILED**

May 23, 2014

Lyle W. Cayce
Clerk

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

Plaintiff–Appellee,

versus

LOGISTICARE SOLUTIONS, LLC; ALBERT GRAHAM,

Defendants–Appellants.

Appeal from the United States District Court
for the Northern District of Mississippi

Before JONES, SMITH, and OWEN, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

As a volunteer driver for LogistiCare Solutions, LLC ("LogistiCare"), Elizabeth Mosley provided non-emergency medical transportation services for Medicaid patients ("members") using an automobile insured by State Farm Mutual Automobile Insurance Company ("State Farm"). While transporting Pearlie Graham, a member, Mosley was involved in an accident in which Graham was injured.

No. 13-60287

Graham's heirs sued Mosley and LogistiCare in Mississippi state court. Based on the "for a charge" exclusion contained in the insurance policy, State Farm sued in federal court seeking a declaration that it has no duty to defend or indemnify Mosley or LogistiCare in the underlying action. The district court granted summary judgment for State Farm, and denied summary judgment for the heirs and LogistiCare, as to both duties. Concluding that State Farm has a duty to defend but no duty to indemnify, we affirm in part and reverse in part and remand.

I.

Mosley registered to become a "volunteer driver" for LogistiCare, agreeing to provide non-emergency medical transportation services for members in exchange for reimbursed mileage expenses.[1] The reimbursement for a particular ride depended on the applicable mileage rate,[2] the miles driven,[3] and the

---

[1] The agreement provided in relevant part:

I have signed my name below to indicate that I desire to volunteer to transport Medicaid members to medical appointments. Naturally, I may refuse to volunteer for any specific transport and may stop volunteering to provide transportation altogether at any time. Because I am a volunteer, I retain the right to volunteer my time as a volunteer driver only at such time I wish to make myself available. . . . I UNDERSTAND THAT I AM STRICTLY A VOLUNTEER AND NOT AN EMPLOYEE OF LOGISTICARE or LOGISTICARE, INC., and agree I do not have any benefits available to employees of LogistiCare, Inc., including but not limited to wages, health insurance, accident insurance, worker's compensation, and retirement benefits. I agree that anytime I use my vehicle to perform, I am responsible for making certain that the vehicle is properly insured. . . . I expect to be reimbursed solely for my mileage expenses associated with using my own vehicle. I understand that I will be reimbursed by LogistiCare, Inc. only for the number of miles driven.

[2] A voluntary driver earns 44¢ per mile for an ambulatory member driven and 48¢ for a wheelchair-bound member.

[3] LogistiCare calculates the mileage based on the number of miles from the driver's house to pick up and drop off the member at a medical appointment then back to his or her residence. LogistiCare reimburses on the calculated number of miles, regardless of the actual route taken.

No. 13-60287

number of members driven.[4] LogistiCare did not allow Mosley to accept payment directly from members.

Pursuant to the Policy issued to Mosley, State Farm agreed "to pay damages an *insured* becomes legally liable to pay because of: *bodily injury* to others . . . caused by an accident that involves a vehicle for which that insured is provided Liability Coverage by this policy." The Policy contained the following exclusion that is the focus of this appeal: "THERE IS NO COVERAGE FOR AN *INSURED*: . . . FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS BEING USED TO CARRY *PERSONS* FOR A CHARGE. This does not apply to the use of a **private passenger car** on a share-the-expense basis." On appeal, LogistiCare challenges the summary judgment on five theories: (1) Collateral estoppel precludes State Farm from re-litigating the applicability of the exclusion; (2) the underlying complaint does not allege facts showing that the "for a charge" exclusion applies; (3) facts beyond the underlying complaint demonstrate that the exclusion does not apply; (4) even if the exclusion applies, the "share-the-expense" exception to the exclusion reinstates coverage; and (5) alternatively, both the "for a charge" exclusion and the "share-the-expense" exception are ambiguous.[5]

II.

We review a summary judgment *de novo*, "using the same standard

---

[4] If a volunteer driver took multiple members in one trip, LogistiCare allowed the driver to stack the reimbursements. For example, if a driver took two ambulatory members on the same trip, he would earn 88¢ per mile for that trip.

[5] Graham's heirs filed a separate *pro se* brief raising two arguments: (1) "The court below denied due process when it failed to find State Farm had a duty and/or duty to indemnify both LogistiCare and [] Mosley."; and (2) "State Farm is collaterally [estopped] from bringing its declaratory judgment." We understand the heirs to be attempting to raise the same arguments as does LogistiCare, so we do not address their challenges separately.

No. 13-60287

as that employed by the district court under Rule 56." *Kerstetter v. Pac. Scientific Co.*, 210 F.3d 431, 435 (5th Cir. 2000). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

*Newman v. Guedry*, 703 F.3d 757, 761 (5th Cir. 2012), *cert. denied*, 134 S. Ct. 162 (2013). We consider "all facts and inferences in the light most favorable to the nonmoving party when reviewing grants of motions for summary judgment." *Murray v. Earle*, 405 F.3d 278, 284 (5th Cir. 2005) (citation omitted).

In diversity cases, this court applies the substantive law of the forum state, Mississippi. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Under Mississippi law, construction of an insurance policy presents a question of law, which we review *de novo. Farmland Mut. Ins. Co. v. Scruggs*, 886 So. 2d 714, 717 (Miss. 2004).

Mississippi treats insurance policies as contracts, which "are to be enforced according to their provisions." *Noxubee Cnty. Sch. Dist. v. United Nat'l Ins. Co.*, 883 So. 2d 1159, 1166 (Miss. 2004). "If a contract contains ambiguous or unclear language, then ambiguities must be resolved in favor of the non-drafting party." *U.S. Fid. & Guar. Co. of Miss. v. Martin*, 998 So. 2d 956, 963 (Miss. 2008) (citation omitted). "Ambiguities exist when a policy can be logically interpreted in two or more ways, where one logical interpretation provides for coverage. However, ambiguities do not exist simply because two parties disagree over the interpretation of a policy." *Id.* (citations omitted). If a provision is ambiguous, Mississippi courts "will apply the interpretation favoring the insured, and will determine the intent of the parties to the insurance contract with reference to what a reasonable person in the insured's position would have understood the terms to mean." *Progressive Gulf Ins. Co. v. We Care Day Care Ctr., Inc.*, 953 So. 2d 250, 253 (Miss. Ct. App. 2006). Courts give words "their plain, ordinary, and popular meaning, not a philosophical or

No. 13-60287

scientific meaning." *Id.*

"[P]rovisions that limit or exclude coverage are to be construed liberally in favor of the insured and most strongly against the insurer." *Lewis v. Allstate Ins. Co.*, 730 So. 2d 65, 68 (Miss. 1998). But "if a contract is clear and unambiguous, then it must be interpreted as written." *U.S. Fid. & Guar. Co.*, 998 So. 2d at 963. "[A] court must refrain from altering or changing a policy where terms are unambiguous, despite resulting hardship on the insured." *Titan Indem. Co. v. Estes*, 825 So. 2d 651, 656 (Miss. 2002).

## III.

In a prior case involving State Farm and LogistiCare, a Georgia trial court concluded that the same "for a charge" exclusion did not prohibit coverage. *See State Farm Mut. Auto. Ins. Co. v. Myers*, No. 2010CV188726, slip op. at 10–11 (Super. Ct., Fulton Cnty., Ga., Aug. 15, 2011). In light of that decision, LogistiCare contends that collateral estoppel prevents State Farm from re-litigating the "for a charge" exclusion in the present case.

In the earlier case, a different Medicaid recipient sued a different LogistiCare volunteer driver for sexual assault. *See id.* at 1–2. Although State Farm argued that the "for a charge" exclusion precluded coverage, the trial court concluded otherwise.[6] The court consequently denied summary judgment in favor of State Farm and granted summary judgment in favor of the insured parties. *See id.* at 12. The Georgia Court of Appeals reversed, concluding that "the damages [ ] alleged in the underlying suit did not result from the use of the car." *State Farm Mut. Auto. Ins. Co. v. Myers*, 728 S.E.2d 787, 789 (Ga. Ct.

---

[6] *Myers*, slip op. at 11 ("[U]nder the circumstances, it does not appear that the parties intended to exclude coverage when the insured was reimbursed for mileage expenses, even if Respondent LogistiCare profited from the transaction. Simply put, the Court is unpersuaded that the instant exclusion prohibits coverage in the underlying case.").

5

No. 13-60287

App. 2012).

"[I]ssue preclusion prohibits a party from seeking another determination of the litigated issue in the subsequent action." *United States v. Shanbaum*, 10 F.3d 305, 311 (5th Cir. 1994). We apply issue preclusion only if four conditions are met:

> First, the issue under consideration in a subsequent action must be identical to the issue litigated in a prior action. Second, the issue must have been fully and vigorously litigated in the prior action. Third, the issue must have been necessary to support the judgment in the prior case. Fourth, there must be no special circumstance that would render preclusion inappropriate or unfair.

*Id.*

Even assuming Mississippi and Georgia courts would interpret a "for a charge" exclusion identically, the trial court's determination that the "for a charge" exclusion did not apply was not "necessary to support the judgment in the prior case." The appellate court's determination that any injuries alleged did not arise out of the use of the car mooted its need to decide the exclusion issue. *Cf. Sport Supply Grp., Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 458 n.4 (5th Cir. 2003). Collateral estoppel poses no obstacle for State Farm.

IV.

"In Mississippi, an insurance company's duty to defend its insureds derives neither from common law nor statute, but rather from the provisions of its policy, that is, its insurance contract with its insured." *Baker Donelson Bearman & Caldwell, P.C. v. Muirhead*, 920 So. 2d 440, 450 (Miss. 2006). "An insurance company's duty to defend its insured is triggered when it becomes aware that a complaint has been filed which contains reasonable, plausible

6

allegations of conduct covered by the policy." *Id.* at 451.[7] "[T]he duty to defend is broader than the insurer's duty to indemnify under its policy of insurance: the insurer has a duty to defend when there is any basis for potential liability under the policy." *Titan*, 876 So. 2d at 1101 (quoting *Merchants Co. v. Am. Motorists Ins. Co.*, 794 F. Supp. 611, 617 (S.D. Miss. 1992)). "However, no duty to defend arises when the claims fall outside the policy's coverage." *Baker*, 920 So. 2d at 451.

LogistiCare contends that the underlying complaint does not allege facts showing that the "for a charge" exclusion applies. In support of that position, LogistiCare notes that the "complaint does not allege, in any form or fashion, what the financial arrangement was between Mosley and LogistiCare for transporting Pearlie Graham." State Farm offers two alternative responses: (1) "Without an allegation stating the transportation was for free, there is no other implication to be derived other than a charge being levied for the service."; and (2) "The [underlying] complaint provides a clear indication that the plaintiffs alleged Mosley was using the vehicle in a manner akin to a taxi (i.e. d/b/a Mosley's Transportation), and acting in furtherance of this business." State Farm also maintains that no extrinsic facts triggered a duty to defend.

"Automobile liability policies frequently contain provisions exempting the insurer from liability, or terminating the policy, if the insured automobile is used for the carrying of passengers for hire, compensation, a consideration, or a specified charge." 8 LEE R. RUSS & THOMAS F. SAGALLA, COUCH ON INSURANCE 3D § 115:107 (2006). The Policy excludes coverage "for damages arising out of the . . . use of a vehicle while it is being used to carry persons for a

---

[7] *See also Mulberry Square Prods. v. State Farm Fire & Cas. Co.*, 101 F.3d 414, 422 ("Mississippi law provides an exception to the 'allegations of the pleadings' rule, which holds that an insurer has a duty to defend when presented with extrinsic facts . . . that trigger coverage under the policy.").

charge." Therefore, before determining whether the underlying complaint alleges facts showing that the exclusion applies, we must first settle how a Mississippi court would interpret "for a charge." On this question, the parties focus their briefing on *Progressive Gulf Insurance Co. v. We Care Day Care Center, Inc.*, 953 So. 2d 250 (Miss. Ct. App. 2006), and *Travelers Insurance Co. v. State Farm Mutual Automobile Ins. Co.*, 175 F. Supp. 673 (E.D. La. 1959), *aff'd*, 274 F.2d 208 (5th Cir. 1960) (per curiam).[8]

In *Progressive Gulf*, a center provided daycare services for the elderly, which included transportation to and from the facility. The center paid one of its drivers the minimum wage but did not give her any mileage reimbursement. She was not paid on a per-trip basis, nor did she receive any payment directly from passengers. On the date of the accident, she used a privately-owned vehicle covered under a personal automobile insurance policy, which excluded coverage when the vehicle was "used to carry persons or property for compensation or a fee." *Progressive Gulf*, 953 So. 2d at 252.

The insurer claimed that "the January 15, 2002 accident was specifically excluded from liability coverage because the accident occurred while [the driver] was using the van to carry a person [ ] 'for compensation or a fee' in the form of [her] wages from We Care." *Id.* at 254. The court rejected this argument, concluding that, at least based on the record before it, "for compensation or a fee" could be given "two equally reasonable meanings": (1) "any situation where money is paid to the insured in connection with transporting a person" or (2) "only those situations where money is paid by the passenger on a per-trip basis." *Id.* at 259–60. Because Mississippi law requires a court to construe

---

[8] Other courts rely on a variety of different methods for determining whether this type of exclusion bars coverage. *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Self*, 93 F.2d 139, 140 (5th Cir. 1937). We principally focus our attention on the available, albeit limited, Mississippi caselaw.

ambiguity in favor of the insured, the court affirmed the summary judgment in favor of the center. *See id.* at 260.

*Progressive Gulf* relied upon *Travelers*, which also involved interpreting a "for a charge" exclusion under Mississippi law. *See id.* at 254–55. In *Travelers*, an employee transported five co-workers in a privately-owned vehicle. "[A]ll six occupants were at the time of the accident in the course and scope of their employment . . . ." Although the company paid the driver a mileage allowance separate from his salary, none of the co-workers paid the driver any money. *Travelers*, 175 F. Supp. at 674. The district court first noticed that the "'carrying persons for a charge' exclusion was apparently added to the company's printed policy form to cover situations in which the insured vehicle was being used as a taxi on a temporary basis . . . ." *Id.* at 675. The exclusion had "no application where an employee is using his own car in the course of his employment and is *being reimbursed* by his employer for such use on a mileage basis." *Id.* at 676 (emphasis added). Because the employee was not profiting from the reimbursement, the "for a charge" exclusion did not apply.[9] We adopted the district court's opinion without comment. *See State Farm Mut. Auto. Ins. Co. v. Travelers Ins. Co.*, 274 F.2d 208 (5th Cir. 1960) (per curiam).

In light of *Progressive Gulf* and *Travelers*, we reject State Farm's suggestion that "for a charge" exclusion applies whenever a driver receives any money in connection with his use of the vehicle. Under Mississippi law, that exclusion bars coverage only where the driver receives payment (1) directly from a passenger (as in the case of a taxi service) or (2) from a third party that amounts to more than reimbursement.

---

[9] *Travelers*, 175 F. Supp. at 676 ("And the mileage is in the usual amount, sufficient only to cover expenses and perhaps upkeep of the car. In fact, except for the first 75 miles, it is precisely the amount the Government allows to its employees for use of their own cars for travel purposes.").

No. 13-60287

We also reject LogistiCare's suggestion to consider "for a charge" to be ambiguous. A term is not ambiguous just because it has not been more specifically defined. "For a charge" is not unusual, technical, or otherwise unclear. Although *Progressive Gulf* and *Travelers* conflict on this point, *Travelers* takes the better approach.[10]

Turning then to the facts of this case, the underlying complaint, in relevant part, alleged the following:

11.
Upon information and belief, Defendant Elizabeth W. Mosley, owned, operated, and controlled, or in the alternative, was doing business as Mosley's Transportation. Upon information and belief, the Defendant, Elizabeth W. [Mosley], owned, operated, and controlled, or in the alternative, was doing business as LogistiCare of MS. Further, upon information and belief, the Defendant, Elizabeth W. Mosley . . . is in the business of transporting patients to and from their medical treatment facilities.

12.
The Defendant, LogistiCare Solutions, LLC, in the regular course of business, operates and maintains a non-emergency medical transportation services business . . . .

13.
That on or about March 19, 2010, the Deceased, Pearlie Graham, was being transported by the Defendant, Elizabeth W. Mosley, and riding as a guest passenger in a vehicle being driven and operated by the Defendant, Elizabeth W. Mosley, Individually and d/b/a Mosley's Transportation and/or d/b/a LogistiCare of MS, or in the alternative, [] was acting in furtherance of and within the course and scope of her

---

[10] *Cf. Nationwide Mut. Ins. Co. v. Thomas*, 103 So. 3d 795, 804 (Ala. 2012) ("Although the Nationwide policy does not define the terms used in the carry-for-a-fee exclusion, the terms are not unusual, technical, or otherwise unclear. . . . [T]herefore, neither the carry-for-a-fee exclusion as a whole nor the individual terms in the exclusion are ambiguous."); *Farmers Ins. Exch. v. Knopp*, 58 Cal. Rptr. 2d 331, 334 (Cal. Ct. App. 1996) ("We conclude the meaning a layperson would ascribe to the language of Exclusion No. 1 is not ambiguous.").

No. 13-60287

employment with Defendant, LogistiCare Solutions, LLC . . . .

The complaint does not allege (1) Graham gave Mosley any payment for transporting her; (2) Mosley was operating a taxi service; or (3) the specific amount of compensation Mosley received for transporting Graham.  At best, the complaint merely suggests Mosley transported Graham for some business purpose.  Even if it could be inferred that Mosley received some compensation from LogistiCare as a result of their alleged employment relationship, the amount of compensation cannot be inferred from the complaint.  The complaint therefore does not demonstrate that Mosley received more than mere reimbursement for her services.

The allegations do not sufficiently trigger the "for a charge" exclusion and therefore do not absolve State Farm of its duty to defend LogistiCare and Mosley.  The district court erred in granting summary judgment in favor of State Farm (and denying summary judgment in favor of LogistiCare and Mosley) as to the duty to defend.[11]

V.

"Under Mississippi law, an insurer's duties to defend and indemnify its insured are distinct and separate duties requiring the use of different standards."  *Estate of Bradley v. Royal Surplus Lines Ins. Co.*, 647 F.3d 524, 529 (5th Cir. 2011).  "Unlike the duty to defend, which can be determined at the beginning of the lawsuit, an insurer's duty to indemnify generally cannot be ascertained until the completion of litigation, when liability is established, if at all."  *Id.* at 531.  "This is because, unlike the duty to defend, which turns on the pleadings and the policy, the duty to indemnify turns on the actual facts

---

[11] We do not need to determine whether extrinsic facts triggered the duty to defend.

11

giving rise to liability in the underlying suit, and whether any damages caused by the insured and later proven at trial are covered by the policy." *Id.*

Therefore, in assessing whether State Farm has a duty to indemnify, we can look to the entire record.  In support of its view that Mosley did not profit from its scheme, LogistiCare emphasizes three portions of the record:  (1) the fact that the reimbursement rate paid to volunteer drivers paralleled the IRS reimbursement rate;[12] (2) the fact that Mosley's Transportation reported losses to the IRS from 2008 to 2010; and (3) portions of Mosley's deposition testimony that LogistiCare believes demonstrate that Mosley did not profit.

The record does not indicate that Graham directly gave Mosley any money for transporting her.  It does, however, contain several indications that Mosley intended to receive more than reimbursement through her relationship with LogistiCare.  First, she created Mosley's Transportation for income she received as a driver for LogistiCare.  LogistiCare provides no explanation for why a driver would create a business if she only expected to break even from the arrangement.  Second, LogistiCare misreads Mosley's deposition testimony:  She testified that she was not solely volunteering for LogistiCare "out of the goodness of [her] heart"; "she [wasn't] losing [] money" for the three years she transported Medicaid patients; and in fact, after accounting for gas and other expenses, she was "seeing a little bit of income."

Furthermore, LogistiCare's plan allowed Mosley to profit from this arrangement in at least two ways.  First, because LogistiCare used a predetermined route for determining mileage regardless of the actual route taken,

[12] I.R.S. News Release (Dec. 3, 2009), *available at* http://www.irs.gov/uac/IRS-Announces-2010-Standard-Mileage-Rates ("Beginning on Jan. 1, 2010, the standard mileage rates for the use of a car (also vans, pickups or panel trucks) will be: [(a)] 50 cents per mile for business miles driven; [(b)] 16.5 cents per mile driven for medical or moving purposes; [(c)] 14 cents per mile driven in service of charitable organizations.").

No. 13-60287

Mosley profited whenever she was able to take a shorter route. And second, LogistiCare allowed Mosley to stack reimbursements when she drove multiple members. Nothing in the record remotely suggests that driving two or three passengers cost Mosley two or three times as much per mile.

The record makes clear that Mosley intended to and did profit from her arrangement with LogistiCare. These facts trigger the applicability of the "for a charge" exclusion.

## VI.

Because the "for a charge" exclusion would absolve State Farm of its duty to indemnify, we must also determine whether the "share-the-expense" exception nevertheless imposes coverage. LogistiCare asserts that "[t]he exception negates the exclusion where the amount provided to the vehicle owner/insured bears a direct relation to the costs of the driver and is not a charge in excess of those costs." To this end, LogistiCare repeats that it merely reimbursed Mosley for her services. In the alternative, LogistiCare suggests that this exception should also be considered ambiguous. "If the insurer shows an exclusion applies, the burden shifts back to the insured to show that there is an exception to the exclusion." *Ass'n Cas. Ins. Co. v. Major Mart, Inc.*, No. 1:12CV022-SA-DAS, 2013 WL 3409217, at *2 (N.D. Miss. July 8, 2013). LogistiCare must therefore demonstrate that the ride was "on a share-the-expense basis."

Even if a passenger pays the insured for the ride, thereby triggering the exclusion, a share-the-expense exception may nevertheless result in coverage. Although *Progressive Gulf* and *Travelers* involved this type of exception,[13]

---

[13] *See Progressive Gulf*, 953 So. 2d at 252 ("This exclusion does not apply to shared-expense car pools[.]"); *Travelers*, 175 F. Supp. at 675 ("'[B]ut the transportation on a share expense basis in a private passenger automobile of friends, neighbors, fellow employees or school children shall not be deemed carrying persons for a charge.'").

neither gives much guidance on how to interpret it.[14]

Regardless of the precise scope of the exception, LogistiCare concedes that the exception does not apply if the insured receives more money than the cost of transportation.[15]  Because the exception itself refers only to *expenses*, the limitation unambiguously does not apply where the insured receives more than reimbursement.  As discussed above, under LogistiCare's scheme, Mosley received more than her costs.[16]  The "share-the-expense" exception, therefore, does not apply.  The district court did not err in granting summary judgment in favor of State Farm (and denying summary judgment for LogistiCare and Graham) as to the duty to indemnify.

The judgment is AFFIRMED in part and REVERSED in part and REMANDED for proceedings as needed.

---

[14] In *Progressive Gulf*, 953 So. 2d at 260, the court found the exclusion itself to be ambiguous and therefore did not need to reach its applicability.  *Travelers* could be read to suggest that the "for a charge" exclusion applied but the exception nevertheless reinstated coverage.  *Compare Travelers*, 175 F. Supp. at 675 ("Under the circumstances, and *particularly in view of the limitation on the exclusion*, it would appear that coverage was not excluded while the employees in suit were passengers in the car." (emphasis added)), *with id.* at 675–76 ("*This 'carrying persons for a charge' exclusion* was apparently added to the company's printed policy form to cover situations where the insured vehicle was being used as a taxi on a temporary basis . . . . *It* was not intended to cover a situation where fellow employees of the owner were being carried to work, irrespective of the fact that the employer, rather than the employees, was paying the mileage." (emphasis added)).  Though this reading is permissible, the court appears not to have found the exclusion to apply.  Regardless, *Travelers* does not provide any further insight as to when the exception applies.

[15] *Cf. Gen. Acc. Ins. Co. of Am. v. Gonzales*, 86 F.3d 673, 678 (7th Cir. 1996) ("Turning to Gonzales's fee, it is clear that his charge reflected a share of the expenses of the trip and certainly was not designed to cover all of his expenses, much less for profit."); *Travelers*, 175 F. Supp. at 675–76.

[16] We therefore do not need to determine whether Mosley and Graham "shared" the costs of the transportation.

14